UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BONWORTH, INC.,

                      Plaintiff,

-against-

RUNWAY 7 FASHIONS, INC.,

                      Defendant.
-------------------------------------------------------x

Case No.: 17-cv-09712-PAE

Civil Action

## DECLARATION OF VICTORIA REGENSBERG IN REPLY TO BONWORTH INC.'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, RUNWAY 7 FASHIONS, INC.'S MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO BONWORTH INC.'S MOTION FOR SUMMARY JUDGMENT

VICTORIA REGENSBERG, upon her oath and under the penalties of perjury, pursuant to 28 U.S.C. § 1746, states and says:

1. I am the President of Runway 7 Fashions, Inc. ("Runway"), the Defendant/Counter-claimant in the above-captioned action, and am personally familiar with the facts set forth herein, having gained such familiarity from my personal participation in the events described herein, as well as from my review of the records maintained by Runway in the normal course of its business.

2. I make this declaration in reply to BonWorth Inc.'s ("BonWorth") opposition to, and in further support of, Runway's motion for an Order, pursuant to Fed. R. Civ. Proc. 56, granting it summary judgment: (a) on its First Counterclaim, in the amount of $171,096.00, together with interest; (b) on its Second Counterclaim, in the amount of $258,025.00, together with interest; and (c) dismissing the Complaint insofar as it pertains to Purchase Order Nos. 4353, 5355, 4356, 4357, 4373, 4374, 4419, 4416, 4557, 4592, 4214, 4216, 4217 and 4221.

3. I also make this declaration in opposition to BonWorth's motion, made pursuant to Fed. R. Civ. Proc. 56: (a) seeking summary judgment on its claim against Runway for alleged breach of contract in the amount of $41,532.00 or, in the alternative, as to liability only; and (b) seeking dismissal of Runway's counterclaims against it.

4. I have read and reviewed all of BonWorth's submissions in opposition to Runway's motion and in support of its own motion, including the Declaration of Gurusankar Gurumoorthy, dated December 19, 2018, and exhibits thereto (the "Gurumoorthy Decl."), and am fully familiar with their contents, averments and allegations.

5. At no time during Runway's short-lived relationship with BonWorth did I, or anyone else at Runway, ever deal or communicate with Mr. Gurumoorthy and it was only during the course of this litigation that we learned that he, an individual who resides in Singapore, together with two partners who also reside overseas, had acquired ownership of BonWorth in the latter part of 2014.

6. Prior to establishing Runway in early 2017, I personally dealt with BonWorth during the course of my employment with Lepko Fashions, and it was never revealed to us that BonWorth had been sold to Mr. Gurumoorthy and his group of overseas partners, who capitalized on the then-good reputation of the BonWorth established by Loren Wells in 1966, and who led Lepko Fashions, Runway and other vendors to believe that we continued to deal with the same reputable company.

7. I have well over 30 years experience in the garment industry and am fully familiar with all of the customs, practices and usages of the industry, codified in the Uniform Commercial Code ("UCC") as a standardized set of rules to govern and regulate business and dealings between merchants, and which are incorporated in BonWorth's Purchasing Procedures, Policies and Sourcing Agreement (the "Purchasing Agreement") which Runway executed on March 7, 2017.

## MY WORK EXPERIENCE IN THE GARMENT INDUSTRY

8.  Prior to establishing Runway, I was employed by Donnkenny Apparel for 17 years, from 1982 through 1999, where I served as division head, responsible for managing a work force of 22 sales people. During that time, I was personally responsible for the account with JC Penney, a national retailer, with whom I generated well over $30 million in sales.

9.  Thereafter, I was employed at Marvin Knitting Mills from 1999 through 2007, where I was in charge of sales and merchandising, working with department stores and specialty stores. From 2007 through 2015, I worked at Wet Paint Knitwear, where I served as Vice-President of sales and merchandising, in charge of all business and product line, generating annual sales of over $7 million.

10. From 2015 through 2017, I was employed at Studio 8/Lepko Fashions, where I served as Vice-President of Sales and Merchandising, solely responsible for all sales and product line.

## THE PAYMENT TERMS AGREED UPON BY THE PARTIES

11. In early 2017, I established Runway to manufacture and sell garments to retail stores and, by way of e-mail sent on February 23, 2017, I contacted Marie Roach, the BonWorth sales manager with whom I dealt with while I worked at Lepko Fashions, advising her that I had left Lepko Fashions and to introduce my new company, inquiring if BonWorth would be interested in Runway's product line. By e-mail dated February 27, 2017, Ms. Roach responded, providing me with BonWorth's Purchasing Agreement for review, and informing me that BonWorth's *"only terms are net 60 DDP to our 3rd party warehouse in Kearny New Jersey."* Annexed hereto as Exhibit "1" are true copies of the afore-described e-mail correspondence, the contents of which are adopted incorporated in their entirety as if more fully set forth herein at length.

12. The terms "net 60 DDP" are well-established industry terms among merchants and mean that payment is due 60 days from the date goods are "delivered duty paid" – "DDP."

13. Consistent with Ms. Roach's representation, each of the purchase orders issued by BonWorth to Runway for goods delivered by Runway (but not paid for by BonWorth) which are the subject of this action specifically states that payment terms for the goods delivered by Runway to BonWorth were "Net 60." *See* Exhibit "2", Exhibit "4", Exhibit "6", Exhibit "8", Exhibit "10", Exhibit "12", Exhibit "14", Exhibit "16", Exhibit "18" and Exhibit "20" to Regensberg Aff.[1]

14. In opposing Runway's motion for summary judgment, BonWorth, by its owner, Mr. Gurumoorthy, claims Runway is seeking to change the payment terms of the Purchasing Agreement, and claims that, pursuant to the terms of the Purchasing Agreement, BonWorth had sixty days *after accepting* the goods delivered to it to pay for same. *See* Gurumoorthy Decl., ¶ 21. That is absolutely false, and all that Runway seeks is to enforce the clear, express and unambiguous terms of payment specifically expressed and set forth in the Purchasing Agreement prepared by BonWorth – nothing more and nothing less.

15. Specifically, while the Purchasing Agreement does provide for alternate terms of payment – i.e., "within sixty days after receipt by the Buyer of a proper invoice with required attachments or, after acceptance of the Goods or Services in question by the Buyer" – such alternate terms apply **only where payment terms are not** "otherwise stated in the Purchase Order." *See* Exhibit "1" to Regensberg Aff., Article 5(b). In this case, however, each of the purchase orders issued by BonWorth to Runway for goods delivered by Runway specifically states that payment for

---

[1] References are to my Affidavit, sworn to November 28, 2018, and t the exhibits annexed thereto, submitted in support of Runway 7 Fashions, Inc.'s motion for summary judgment.

same was on the basis of "Net 60" – and nothing else. *See* Exhibit "2", Exhibit "4", Exhibit "6", Exhibit "8", Exhibit "10", Exhibit "12", Exhibit "14", Exhibit "16", Exhibit "18" and Exhibit "20" to Regensberg Aff.

16. It is BonWorth – not Runway – that is seeking to change the payment terms offered by BonWorth and accepted by Runway in accordance with the Purchasing Agreement, by claiming that it had sixty days *after accepting* the goods delivered to it to pay for same, since each and every one of the Purchase Orders issued by BonWorth pursuant to the Purchasing Agreement specified a "Net 60" payment term in accordance with Article 5 of said Purchasing Agreement. Not a single one of the Purchase Orders issued by BonWorth specified payment terms of sixty "days after acceptance of the Goods" by BonWorth. *See* Exhibit "2", Exhibit "4", Exhibit "6", Exhibit "8", Exhibit "10", Exhibit "12", Exhibit "14", Exhibit "16", Exhibit "18" and Exhibit "20" to Regensberg Aff.

## BONWORTH'S NON-PAYMENT FOR GOODS DELIVERED TO IT

17. On May 30, 2017 BonWorth issued Purchase Order No. 3923 to Runway for garments to be delivered by October 9, 2017, with payment terms of "Net 60." *See* Regensberg Aff., ¶ 8; *also* Exhibit "2" to Regensberg Aff.

18. On October 5, 2017 Runway delivered the garments under Purchase Order No. 3923 to BonWorth's designated warehouse in Kearny, New Jersey. *See* Regensberg Aff., ¶ 10; *see also* BonWorh Revised Statement of Facts, ¶ 8.

19. Runway issued Invoice No. 19749, in the amount of $21,000.00, for goods delivered under Purchase Order No. 3923. *See* Regensberg Aff., ¶ 12; *also* Exhibit "3" to Regensberg Aff.

20. Pursuant to the express terms of Article 5(b) of BonWorth's Purchasing Agreement, payment for the goods delivered to BonWorth under Purchase Order No. 3923, as specified in such

Purchase Order, was on the terms of "Net 60," or to be paid on December 4, 2017, said date being 60 days from the date of delivery of goods. *See* Exhibit "1" to Regensberg Aff., Article 5(b); *also* Exhibit "2" to Regensberg Aff.

21. BonWorth failed to make payment for the goods delivered under Purchase Order No. 3923 when due on December 4, 2017 pursuant to the express terms of Article 5(b) of BonWorth's Purchasing Agreement and the payment term specified in such Purchase Order and, by way of e-mail sent on December 8, 2017, I informed BonWorth that, as a result of its breach of its obligations by failing to make such payment, Runway was suspending all future delivery of goods under Purchase Order Nos. 4353, 4355, 4356, 4357, 4373, 4374, 4419, 4416, 4557, 4592, 4214, 4216, 4217, 4221. *See* Exhibit "36" to Regensberg Aff.

22. At the time I notified BonWorth all future deliveries were suspended by reason of its failure to make payment for goods delivered to it, the first delivery under the outstanding purchase orders was due ten days later – on December 18, 2017 – under Purchase Order Nos. 4216, 4217, 4221 and 4335. *See* Exhibit "22", Exhibit "23", Exhibit "24" and Exhibit "25" to Regensberg Aff.

23. Mr. Gurumoorthy claims payment for goods delivered to BonWorth under Purchase Order No. 3923 was not due at the time Runway suspended future deliveries for non-payment. *See* Gurumoorthy Decl., ¶ 36. Mr. Gurumoorthy further states BonWorth owes nothing to Runway. *See* Gurumoorthy Decl., ¶ 39. Mr. Gurumoorthy's representations, made under the penalty of perjury, are false and belied by his own prior actions in authorizing payment to Runway at a time he now claims no payment was due, as well as by BonWorth's own contemporaneous communications with Runway in response to my e-mail communication of December 8, 2017 informing it of Runway's suspension of future deliveries for non-payment.

24. Specifically, at his deposition in this action, the transcript of which is annexed hereto as Exhibit "2"), Nick Dmytryszyn, BonWorth's Chief Financial Officer, testified that no payments may be made by BonWorth without the approval of Mr. Gurumoorthy, who is also a signatory on all checks issued by BonWorth. *See* Exhibit "2", page 43, line 5 through page 45, line 8.

25. Mr. Dmytryszyn also testified that, a few days prior to Friday, December 8, 2017, Mr. Gurumoorthy instructed him to issue a check, a copy of which was marked as Exhibit "3" at Mr. Dymytryszyn's deposition and reproduced herein as Exhibit "3", on December 8, 2017 as payment for the goods delivered to BonWorth by Runway under Purchase Order No. 3923. *See* Exhibit "2" hereto, page113, line 13 through page 115, line 6; *see also* Exhibit "2" hereto, page119, line 21 through page 123, line 14.

26. Notably, contrary to Mr. Gurumoorthy's newly-manufactured explanation of when payments were allegedly due to Runway in an effort to create a sham and non-existing issue of fact, December 8, 2017 – the date for which he himself authorized payment to Runway for those goods delivered under Purchase Order No. 3923 – is sixty (60) days from the original anticipated delivery date of October 9, 2017 stated on said purchase order. *See* Exhibit "2" to Regensberg Aff. Those goods, however, were actually delivered four days earlier – on October 5, 2017 – as acknowledged and admitted by BonWorth. *See* BonWorh Revised Statement of Facts, ¶ 8. Accordingly, as per the terms of said Purchase Order, payment therefor was due sixty days later, on December 4, 2017.

27. Mr. Dmytryszyn further testified he failed to issue payment for the goods delivered by Runway under Purchase Order No. 3923 on December 8, 2017 as directed by Mr. Gurumoorthy, but purportedly attempted to do so by issuing a check on December 11, 2017. *See* Exhibit "2" hereto, page 119, line 21 through page 121, line 7; *see also* Exhibit "3" hereto.

28. Mr. Dmytryszyn acknowledged that, in the one instance where BonWorth purported to make payment to Runway, the check it purportedly issued was both made out to the wrong entity and purportedly mailed to the wrong address. *See* Exhibit "2" hereto, page 69, line 2 through page 70, line 18; *also* Exhibit "2" hereto, page 77, line 11 through page 78, line 17.

29. Notably, Mr. Dymytryszyn testified that, although the invoice for goods delivered under Purchase Order No. 3923 was in the amount of $21,000.00, the check by means of which BonWorth purported to make payment was in the amount of $14,100.00 only because of the offsets allegedly due to BonWorth from Runway. *See* Exhibit "2" hereto, page 115, line 3 through page 116, line 25; *see also* Exhibit "3" hereto. Therefore, according to BonWorth itself, there was, at the very least, a payment of $14,100.00 due to Runway for goods delivered under Purchase Order No. 3923 after deduction of any offsets allegedly due to BonWorth.

30. Finally, Mr. Dmytryszyn also admitted that "BonWorth has not made any payments to the correct party under any of the invoices issued by Runway 7 Fashions." *See* Exhibit "2" hereto, page 148, line 18 through line 23.

31. Notably, with respect to the single check which BonWorth purportedly issued at Mr. Gurumoorthy's specific directive, it was never received by Runway or its factor. Nor has BonWorth ever issued a replacement check as of this date.

32. Contrary to BonWorth's current position, presented for the first time in opposition to Runway's motion, at no time did BonWorth ever claim that no payments were due to Runway on account of missed deliveries or other purported infractions; in fact, quite the opposite. Specifically, BonWorth, by way of e-mail sent on December 8, 2017 responding to my notification that future deliveries were being suspended by reason of its default in making payment, stated:

> "We are not sure what you are talking about – PO-3923 was due Oct 8 and as such per the terms of the agreement is due only on Dec 8. We have checked with our colleagues (with whom you could have followed up as well) and they have already processed this invoice for your [sic] per the agreement and was to be included in the weeks run as it was to have been per the agreement."

[emphasis added] *see* Exhibit "37" to Regensberg Aff., electronic-mail sent by BonWorth's Vendor Compliance Department on December 8, 2017 at 11:02 p.m. In addition, by way of e-mail sent just 13 minutes later, BonWorth stated as follows:

> "It seems you got the dates wrong and we obviously would not process an invoice on Dec 4 when it is not due on Dec 4 – we will process when due as was done."

[emphasis added] *see* Exhibit "37" to Regensberg Aff., electronic-mail sent by BonWorth's Vendor Compliance Department on December 8, 2017 at 11:15 p.m. As the foregoing deposition testimony, Mr. Gurumoorthy's authorization of payment under Purchase Order No. 3923, and BonWorth's e-mail correspondence establish, BonWorth's current claim, as presented by Mr. Gurumoorthy, that no payments were ever due to Runway, is designed to raise a sham issue of fact.

33. Notably, the check purportedly issued as payment for those goods delivered under Purchase Order No. 3923, but never received by either Runway or its factor, is dated December 11, 2017 – the very same date on which BonWorth commenced this action. *See* Exhibit "3" hereto.

## THE DEMAND FOR ADEQUATE ASSURANCE

34. Contrary to BonWorth's baseless and erroneous contention, Runway had valid reasons and concerns justifying its demand for adequate assurance of performance as a condition to future deliveries of goods. First, on November 28, 2017 – just six (6) days before the first payment was due for goods delivered to BonWorth under Purchase Order No. 3923, we received notification

from Coface North America Insurance Company that coverage of BonWorth was being cancelled because of "Very poor trade payments. Claims submitted." *See* Exhibit "35" to Regensberg Aff.; *see also* Regensberg Aff., ¶ 64.

35. Immediately upon our receipt of the insurance cancellation notice, I conducted an investigation which revealed that, as of November 28, 2017, no less than four separate actions had been commenced against BonWorth in this judicial district alone by vendors for non-payment, which led me to fear that BonWorth would be defaulting on its obligations to Runway. *See* Regensberg Aff., ¶¶ 65 - 69.

36. My fears that BonWorth would default were confirmed when payment for goods delivered under Purchase Order No. 3923 was not made when due. *See* Regensberg Aff., ¶ 70.

37. Our fears were further exacerbated when BonWorth failed to respond to inquiries from our factor, copies of which are annexed hereto as Exhibit "4", requesting information on the status of payment for the goods delivered to it on October 5, 2017 under Purchase Order No. 3923.

38. Finally, on the same date – December 19, 2017 – that we, by our counsel, demanded that BonWorth provide us an adequate assurance of performance by depositing the agreed-upon price of future goods in escrow with either our counsel or its counsel as a condition for future delivery, we received further notification from our insurance carrier confirming that the reason for cancellation of coverage of the BonWorth account was due to "Consistently slow pay. Low scores. Weak retail environment and the lack of financials. **LOREN WELLS (828) 697-2216 declined financials**." *See* Exhibit "V" to Gurumoorthy Decl. Notably, Loren Wells was not associated with BonWorth following the sale of the company to Mr. Gurumoorthy and his foreign partners in 1994, yet they continued to falsely present him as associated with the company.

39. Relatedly, by way of Mr. Gurumoorthy's Declaration, BonWorth asserts it does not agree with the reasons given by our insurance carrier for cancellation of coverage of its account, claiming "BonWorth pays invoices when due." *See* Gurumoorthy Decl., ¶ 52. That is absolutely false. Proof of BonWorth's lie is established by way of a Decision and Order entered on July 30, 2018 – a copy of which is annexed hereto as Exhibit "5" – in GMC Mercantile Corp. v. Bon Worth Inc., Supreme Court of State of New York, County of New York, Index No.: 653931/2017 (one of the cases which raised our concern that BonWorth would not honor its payment obligations). In that action, summary judgment was granted against BonWorth for failure to make payment as required.

40. Subsequently, on August 2, 2018, a Judgment – a copy of which is annexed hereto as Exhibit "6" – in the amount of $227,284.29, was entered against BonWorth in the aforesaid action. BonWorth has not paid said Judgment as of this date.

## THE ERROR CODES GENERATED BY BONWORTH

41. On October 5, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 3923, requesting that it verify its accuracy as it was the first order ever shipped to it by Runway. BonWorth did not respond to Runway's inquiry until **50** days later – on November 24, 2017 – when it issued "Error Code 812," imposing a penalty for a purported "Failure to follow instructions in routing guide." *See* Exhibit "E" to Gurumoorthy Decl.

42. On October 19, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 4169, requesting an appointment to deliver the goods thereunder on October 20, 2017 as same had a due date of October 23, 2017. BonWorth did not respond to Runway's inquiry until **36** days later – on November 24, 2017 – when it issued "Error Code 510," imposing a penalty for a purported "Inaccurate packing list." *See* Exhibit "F" to Gurumoorthy Decl.

43. On October 28, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order Nos. 3987 and 3988, inquiring if any revisions need to be made on same. BonWorth did not respond to Runway's inquiry until **27** days later – on November 24, 2017 – when it issued "Error Code 301," imposing a penalty for alleged late delivery. *See* <u>Exhibit "G"</u> to Gurumoorthy Decl.

44. On October 31, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 4179, inquiring if any revisions need to be made on same, and advising that a particular style (#42342/43) was short by 108 units. BonWorth did not respond to Runway's inquiry until **24** days later – on November 24, 2017 – when it issued "Error Code 100," imposing a penalty for "Unauthorized overage or underage." *See* <u>Exhibit "J"</u> to Gurumoorthy Decl.

45. On October 31, 2017, Runway requested an appointment to deliver the goods under Purchase Order No. 4179 on the following day – November 1, 2017 – at 11:30 a.m. BonWorth did not respond to Runway's inquiry until **24** days later – on November 24, 2017 – when it issued "Error Code 301," imposing a penalty for alleged late delivery. *See* <u>Exhibit "J"</u> to Gurumoorthy Decl. On the same date, BonWorth also issued "Error Code 600," imposing yet another penalty for alleged "Failure to properly pack carton, including empty space in carton." *See* <u>Exhibit "J"</u> to Gurumoorthy Decl. Finally, to cap things off, BonWorth issued "Error Code 814" on the same date, imposing yet another penalty for alleged "Failure to follow any of the guidelines as described in the manual." *See* <u>Exhibit "J"</u> to Gurumoorthy Decl.

46. On November 8, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 4122 and requesting an appointment to deliver the goods under said purchase order on the following day – November 9, 2017 – by 11:00 a.m. BonWorth did not

respond to Runway's inquiry until **16** days later – on November 24, 2017 – when it issued "Error Code 301," imposing a penalty for alleged late delivery. *See* Exhibit "K" to Gurumoorthy Decl. On the same date, BonWorth also issued "Error Code 600," imposing another penalty for "Failure to properly pack carton, including empty space in carton." *See* Exhibit "K" to Gurumoorthy Decl. Finally, in what has by now become a familiar routine, BonWorth issued "Error Code 812" on the same date, imposing a penalty for alleged "Failure to follow instructions outlined in routing guide." *See* Exhibit "K" to Gurumoorthy Decl.

47. On November 10, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 3930, inquiring if any revisions needed to be made thereto, and requesting an appointment to deliver the goods under said purchase order on the following day – November 11, 2017 – at 8:00 a.m. BonWorth did not respond to Runway's inquiry until **14** days later – on November 24, 2017 – when it issued "Error Code 510," imposing a penalty for "Inaccurate packing list." *See* Exhibit "L" to Gurumoorthy Decl. BonWorth also issued "Error Code 600," imposing another penalty for "Failure to properly pack carton, including empty space in carton." *See* Exhibit "L" to Gurumoorthy Decl. Finally, for good measure, BonWorth again issued "Error Code 814," imposing a penalty for alleged "Failure to follow any of the guidelines as described in the manual." *See* Exhibit "L" to Gurumoorthy Decl.

48. On November 17, 2017, Runway sent an e-mail to BonWorth attaching a Rank master packing list for Purchase Order No. 4108, requesting that BonWorth verify its accuracy, and further requesting an appointment to deliver the goods under said purchase. BonWorth did not respond to Runway's inquiry until **7** days later – by way of two separate e-mails sent on November 24, 2017 – when it issued "Error Code 600," imposing a penalty for "Failure to properly pack carton, including

-13-

empty space in carton," and "Error Code 812," imposing another penalty for an alleged "Failure to follow instructions outlined in routing guide." *See* <u>Exhibit "M"</u> to Gurumoorthy Decl. BonWorth followed up **12** days later, on December 6, 2017, when it issued "Error Code 510," imposing another penalty for "Inaccurate packing list." *See* <u>Exhibit "M"</u> to Gurumoorthy Decl.

49.  Notably, all of the afore-described error codes were generated by BonWorth within the span of 8:08 p.m and 8:18 p.m., and 10:48 p.m. and 10:50 p.m., on November 24, 2017 – just **10** days before the first payment was due for the first shipment of goods delivered by Runway. *See* <u>Exhibit "E"</u>, <u>Exhibit "F"</u>, <u>Exhibit "G"</u>, <u>Exhibit "J"</u>, <u>Exhibit "K"</u>, <u>Exhibit "L"</u> and <u>Exhibit "M"</u> to Gurumoorthy Decl.

50.  At no time did BonWorth ever provide an explanation for the error codes it generated, nor did it ever provide Runway with an invoice or break-down of the amount of penalties it sought to impose. Further adding to the confusion caused by BonWorth's non-responsiveness, is that it would "recall" certain error codes, as evidenced by the e-mail sent on December 6, 2017, a copy of which is annexed hereto as <u>Exhibit "7"</u>, without providing any explanations for the recall, or even why the error code was generated in the first place.

51.  By way of e-mail sent on November 24, 2017, a copy of which is annexed hereto as <u>Exhibit "8"</u>, I contacted BonWorth's Vendor Compliance, requesting a meeting to discuss the error codes issued to Runway. BonWorth responded by way of e-mail sent on November 24, 2017, a copy of which is annexed hereto as <u>Exhibit "9"</u>, advising that "Error codes are triggered automatically," that we could submit a reversal request based on our "performance improvements to the sourcing team when [we] meet with them," and that, "Thankfully there is no quality issue so far ...[as] that is never on the table for discussion."

52. We did not hear back from BonWorth and, by way of e-mails sent on November 24, 2017, November 27, 2017 and November 28, 2017, copies of which are collectively annexed hereto as Exhibit "10", we continued to request a meeting to discuss the "error codes," which were causing us grave concerns. By way of e-mail sent on November 29, 2017, a copy of which is annexed hereto as Exhibit "11", BonWorth informed us that the error codes were self-explanatory, that it was not concerned with whatever arrangements we have with counter parties, and reiterated that there were no quality issues with the goods we delivered.

53. By way of e-mail sent on December 4, 2017, a copy of which is annexed hereto as Exhibit "12", we requested that BonWorth "let [us] know who to speak with so we can discuss [the error codes] issue," to which BonWorth responded by e-mail of the same date, a copy of which is annexed hereto as Exhibit "13", advising, "We will check with the back office in Indonesia and request an operational person to assist you."

54. By way of e-mail sent on December 5, 2017, a copy of which is annexed hereto as Exhibit "14", we requested that BonWorth "let [us] know when an operational person will be in touch to assist [us]," to which BonWorth responded by e-mail of the same date, a copy of which is annexed hereto as Exhibit "15", advising that they "did talk to them for [us]," and for us to call a "Mr. Abdul Kadar," who was away, but to contact him in Indonesia the following week.

55. By way e-mail sent on December 6, 2017, a copy of which is annexed hereto as Exhibit "16", we informed BonWorth that we once again received additional "error codes," did not know why we received such error codes, and requested that BonWorth let us know if we could speak to someone immediately instead of having to wait a week. BonWorth's response was complete radio silence, and to date it has never explained the basis for any of the error codes.

56. Notably, nowhere in its Complaint has BonWorth sought any damages for any of the charge-backs and/or offsets allegedly due to the error codes, but has limited its claim to alleged "lost profits" purportedly sustained by reason of Runway's suspension of deliveries for non-payment. *See* Document No. 1.[2]

57. Similarly, nowhere in its Amended Disclosures, served pursuant to Fed. R. Civ. P. 26(a)(1), does BonWorth set forth or itemize any damages it is seeking purportedly on account of any of the charge-backs and/or offsets allegedly due to the error codes, but has limited its claim to alleged liquidated damages for orders the delivery of which was suspended by Runway for non-payment. *See* Exhibit "W" to Gurumoorthy Decl.

**CANCELLATION OF PURCHASE ORDER NO. 3924**

58. A genuine issue of fact exists regarding the cancellation of Purchase Order No. 3924 and the reasons for such cancellation, as evidenced by BonWorth's own submissions. Specifically, by way of Mr. Gurumoorthy's Declaration, BonWorth claims that it cancelled the goods ordered in Purchase Order No. 3924 "because they did not meet BonWorth's specifications." *See* Gurumoorthy Decl., ¶ 41. Yet, in the immediately following paragraphs of the very same Declaration, BonWorth contradicts itself, claiming that the "goods ordered in Purchase Order No. 3924 were cancelled by Runway." *See* Gurumoorthy Decl., ¶ 44. BonWorth takes yet another position, claiming that the "goods ordered in Purchase Order No. 3924 could not be delivered on time due to issues at the factory," and that it "informed Runway that it would accept a late delivery of Purchase Order No. 3924 with an error code." That is false.

---

[2] References are to the documents electronically filed in this action, of which the Court is respectfully requested to take judicial notice.

59. Upon receipt of Purchase Order No. 3924, we immediately produced samples of the various styles of garments ordered and forwarded same to BonWorth for approval. BonWorth did approve the samples we provided, and we immediately commenced production of the entire lot of goods ordered. Once production was completed, we forwarded a random number of garments, known as Top of Production, or TOP, to BonWorth for inspection and final approval. BonWorth did not respond for several weeks and, when it finally did respond, it rejected the samples, claiming they were not acceptable.

60. In fact, the entire lot of goods manufactured for BonWorth under Purchase Order No. 3924 did meet BonWorth's specifications as established by the AQL 2.5 inspection report, a copy of which is annexed hereto as Exhibit "17", prepared on September 20, 2017 by an independent entity as demanded by BonWorth. Nevertheless, BonWorth rejected the goods manufactured under Purchase Order No. 3924, which rejection was wrongful.

### CANCELLATION OF PURCHASE ORDER NO. 4214

61. Regarding the cancellation of Purchase Order No. 4214, the goods ordered under said purchase order were in fact manufactured for BonWorth, and passed inspection as established by the AQL 2.5 inspection report, a copy of which is annexed hereto as Exhibit "18", which was prepared by an independent entity as demanded by BonWorth.

62. Nevertheless, the goods ordered by BonWorth under Purchase Order No. 4214 were not delivered to BonWorth because Runway suspended all deliveries to it by reason of non-payment, and BonWorth had rejected Runway's demand for adequate assurance of performance as a condition to future deliveries of goods under pending purchase orders. Therefore, BonWorth has only itself to blame for cancellation of Purchase Order No. 4214.

63. I declare and certify under penalty of perjury and the laws of the United States of America that the foregoing statements made by me are true and correct.

Dated: New York, New York
January 14, 2019

VICTORIA REGENSBERG